# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY K. ROLINSON,<br><br>  Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | CASE NO. 06-CV-1374-H (RBB)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT |

On July 6, 2006, Danny K. Rolinson ("Plaintiff") filed a complaint pursuant to section 405(g) of the Social Security Act ("Act") requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying Plaintiff a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Titles II and XVI, respectively, of the Act. (Doc. No. 1.) On February 28, 2008, Plaintiff filed a motion for summary judgment. (Doc. No. 14.) On April 7, 2008, Defendant filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion for summary judgment. (Doc. Nos. 17, 18.) Plaintiff filed a reply to Defendant's opposition on May 13, 2008. (Doc. No. 19.) On June 3, 2008, the parties filed a joint motion to supplement the administrative record to supply the Court with the complete text of the Administrative Law Judge's decision,

one page of which was missing from the Administrative Record. (Doc. No. 20.) The Court granted that joint motion. (Doc. No. 21.)

For the following reasons the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## Background

Plaintiff is a 51 year old male with a high school education. (Administrative Record ("AR") 19.) His past work experience includes employment as a janitor and operating room aide. (AR 19.) Plaintiff alleges that he became disabled in July, 2002 because of asthma, high blood pressure, cardiomegaly, leg pain, cysts and depression. (AR 19, 30.) Plaintiff initially filed applications for DIB and SSI payments on May 21, 2004. (AR 18.) Defendant denied his claim initially and upon reconsideration on July 9, 2004 and again on December 17, 2004. (AR 30-40.) On February 16, 2005, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (AR 41.)

The hearing before the ALJ took place on October 24, 2005. (AR 25.) The ALJ followed the five-step sequential evaluation process for determining disability: (1) evaluate recent gainful work activity; (2) determine medical severity of impairment(s); (3) determine whether impairment(s) meet or equal the duration and listing requirements of the Act; (4) assess residual functional capacity and determine whether claimant can perform previous work; (5) if claimant is disabled at steps 1-4, the burden shifts to Commissioner to determine whether claimant can adjust to other work. 20 C.F.R. §§ 404.1520, 416.920.

At step two, the ALJ determined that Plaintiff's degenerative joint disease in the right hip and knee, hypertension, and status post right cortical intraparenchymal hemorrhage were severe. (AR 19-20.) However, the impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulations No. 4 and 16 at step three. 20 C.F.R. §§ 404.1520, 416.920; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); (AR 24-25.) At step four, Plaintiff's residual

functional capacity allowed him to perform more than sedentary work, but less than the full range of light work. (AR 25.) However, the ALJ determined that Plaintiff's allegations of disabling pain, medical side effects, and asthma limitations were not credible and that at step five Plaintiff was not disabled within the framework of the Medical-Vocational Rules 201.21 and 202.20 ("Grids"). (AR 25.) Based on these findings, Plaintiff was denied a period of disability and DIB and SSI benefits under Sections 216(I), 223, 1602, and 1614(a)(3)(A) of the Act. (Id.) Plaintiff's request for review of the ALJ's decision was denied on May 2, 2006, and the ALJ's decision became the final decision of the Commissioner. (AR 3.)

## Discussion

### A. Standard of Review

Section 405(g) of the Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C.§ 405(g). Upon review, the Commissioner's decision must be affirmed if it was supported by substantial evidence and based on proper legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla" but less than a preponderance, and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). A finding of substantial evidence is determined from the record as a whole. Desrosiers v. Sec'y of Health and Human Serv., 846 F.2d 573, 575-76 (9th Cir. 1988).

The claimant bears the burden of proving disability through the first four steps of the sequential evaluation. 20 C.F.R. §§ 404.1520(f), 416.920(f); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990). If the claimant meets this burden the Commissioner assumes the burden of proof at step five to show that there are jobs existing in the national economy that the claimant could perform given his residual functional capacity, age, education, and work experience. Bowen v. Yuckert, 482 U.S. 37, 146 n. 5 (1987).

1    Plaintiff contends that the ALJ's decision was not supported by substantial
2 evidence because the ALJ failed to consider medical and lay testimony relating to
3 Plaintiff's asthma and neck tumor when assessing the severity of Plaintiff's
4 impairments at step two and residual functional capacity at step four.  Plaintiff also
5 contends that the ALJ misused the Grids to determine that Plaintiff could perform
6 other work at step five because the ALJ failed to review or reject the opinions of two
7 State agency medical consultants.  For the following reasons, the Court concludes
8 that substantial evidence supports the ALJ's assessments and that the ALJ used the
9 Grids appropriately.

**B.  Substantial Evidence Supports the ALJ's Assessment**

**1. The ALJ's Assessment of the Severity of Plaintiff's Impairments**

12    An impairment is not severe if it does not significantly or even minimally
13 effect a claimant's physical or mental capacity to perform basic work activities.  20
14 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling ("SSR") 85-28. Here, the
15 Court concludes that medical records from Comprehensive Healthcare and Scripps
16 Hospital constitute substantial evidence supporting the ALJ's finding that Plaintiff's
17 asthma and pain from a neck cyst did not qualify as severe impairments.

18    First, between 2003 and 2005 three treating physicians at Scripps Mercy
19 Hospital and one consulting physician stated that Plaintiff's asthma required no
20 treatment beyond an inhaler, that Plaintiff was able to perform without difficulty all
21 activities of daily living, that there was no evidence of frequent severe asthma
22 attacks, and that Plaintiff's lungs were clear with no wheezing.  (AR 208, 211-12,
23 239.) Although Disability Determination Services consulting doctors, Dr. Mauro and
24 Dr. Swan, indicated that a severe medical impairment was established by Plaintiff's
25 hypertension and asthma, medical records indicate that outpatient medication "clears
26 all symptoms."  (AR 254) (emphasis in original).  The ALJ determined that since
27 Plaintiff's asthma did not create more than a minimal limitation on his ability to
28 perform basic work activities, his asthma was not a severe impairment.  Warre v.

1 Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (determining credibility and resolving conflicts in medical testimony are the ALJ's responsibility).

Second, because pain is subjective and not susceptible to measurement by reliable clinical techniques, a Plaintiff must establish an underlying medical cause of pain, then substantiate the pain in other ways. SSR 88-13; see, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991). While the neck cyst constitutes an underlying medical cause of pain, Plaintiff terminated his employment for the purpose of excising the cyst, then waited two years before having it excised. (AR 139, 290-91.) He also failed to attend a scheduled treatment six months after terminating his employment. (AR 168.) When a Plaintiff fails to seek or follow prescribed treatment for pain, the ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. See, e.g., Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Further, Plaintiff's cyst was not malignant and showed no atypical cells. One week after excision Plaintiff was healing and complained of little pain. (AR 139.) Based on the record as a whole, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's impairments were not severe.

### 2. Substantial Evidence Supports the ALJ's RFC Assessment

A residual functional capacity assessment can be made only after identifying the "individual's functional limitations or restrictions and assess[ing] his or her work-related abilities on a function-by-function basis." SSR 96-8p; see also, 20 C.F.R. § 404.1545. Medical testimony, related symptoms, and other evidence inform the assessment. 20 C.F.R. § 404.1545(a)(3). The Court concludes that the ALJ relied on substantial medical and lay testimony in assessing Plaintiff's residual

functional capacity as less than light but more than sedentary. (AR 22a.[1])

First, the ALJ considered all symptoms and medical evidence when identifying the Plaintiff's physical, mental and other abilities to determine functional limitations. (AR 22-22a.) The ALJ noted that Plaintiff did his own laundry at times, shopped for groceries, that he could frequently lift items weighing up to 10 pounds, and that Plaintiff occasionally could lift up to 20 pounds. (AR 22.) Plaintiff admitted to being able to stand for up to four hours and that he had no problems sitting. (AR 22, 286.) Although Plaintiff was hospitalized for one week, the ALJ noted that his doctor discharged him in good condition and able to perform activities of daily living. (AR 212.)

Plaintiff testified that his medication side effects caused him to sleep 16 to 17 hours a day and that he took his medication as prescribed. (AR 284.) A statement from Plaintiff's cousin indicated that Plaintiff slept too long during the day and had difficulty concentrating and getting along with others. (AR 120-28.) However, the ALJ considered this testimony not credible since the record reflected inconsistent claims by the Plaintiff. Most notably, Plaintiff consistently failed to take the hypertension medication that he claimed made him tired, and his medical records did not substantiate his complaints about disabling pain, difficulty remembering, sitting, standing, walking, using his hands or writing. (AR 23, 76, 168, 198, 209, 254-56.) Resolving such conflicts in medical testimony and determining credibility are the sole responsibility of the ALJ. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).

Second, although Plaintiff argues that the assessments of Dr. Mauro and Dr. Swan were disregarded, they both assessed Plaintiff with the ability to perform exertionally medium work, which is a greater work ability that the sedentary to light ability assessed by the ALJ. (AR 184-91, 204.) Further, Dr. Mauro noted that

---

[1] "AR 22a" refers to page six of the Administrative Law Judge's opinion, which was missing from the Administrative Record and supplemented by joint motion. (<u>See</u> Doc. No. 21.)

although Plaintiff complained of disabling asthma and hypertension, "allegations are deemed less than credible, in that . . . disabling severity of any alleged condition is not . . . supported by MER." (AR 189.) The Court concludes that the ALJ appropriately resolved questions of credibility and conflicts in medical testimony and that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity.

### C. The ALJ applied the correct legal standards.

Use of the Medical-Vocational Rules ("Grids") is appropriate even when they do not "completely and accurately represent a claimant's [non-exertional] limitations," provided that the ALJ first determines whether a claimant's nonexertional limitations significantly affect the range of work permitted by his exertional limitations." Tackett v. Apfel, 180 F.3d at 1101-02. Here, the ALJ determined that Plaintiff's asthma did not significantly limit Plaintiff's range of work and that Plaintiff's allegations of side effects from his medication were not completely credible. Therefore, the Court concludes that the ALJ used the Grids appropriately under the law.

First, the effects of Plaintiff's asthma were already factored into Dr. Mauro's determination of medium work capacity and did not significantly erode Plaintiff's ability to perform the demands of basic work. (AR 185.) Further, Plaintiff's asthma was controlled by medication. Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (reliance on Grids is proper where nonexertional impairments are controlled by medication).

Second, the ALJ determined that Plaintiff's complaints of medication side effects were not supported by the medical record. The parties disagree about whether the Comprehensive Health Center's notation that Plaintiff suffered "no side effects" referred to effects of his blood pressure medication or to effects of his high blood pressure. (AR 194.) However, either interpretation supports a denial of benefits. On the one hand, if Plaintiff suffered no side effects from his medication,

1  as Defendant argues, Plaintiff's complaints of drowsiness as a result of his
2  medication are unfounded.  On the other hand, if Plaintiff suffered no side effects
3  from his high blood pressure, as Plaintiff argues, Plaintiff's high blood pressure
4  indicates he was not taking his medication and could not suffer side effects from it.
5  Further, medical evidence contradicted the third party report that Plaintiff was unable
6  to concentrate.  (AR 120-28.)  Scripps Mercy treatment records noted he was "alert
7  and oriented . . . His attention span and concentration [were] normal.  His remote
8  memory [was] intact."  (AR 243.)  Dr. Santana also noted, "no significant problems
9  from a mental standpoint."  Allen v. Heckler, 749 F.2d at 579 (determining
10 credibility and resolving conflicts in medical testimony are the ALJ's responsibility);
11 (AR 207.)  The Court concludes that because these nonexertional limits did not
12 significantly affect Plaintiff's range of work, the ALJ's exclusive use of the Grids
13 was appropriate.  Tackett v. Apfel, 180 F.3d at 1101-02.

**Conclusion**

For the foregoing reasons, the Court concludes that substantial evidence supports the Commissioner's decision, and that the Commissioner based that decision on proper legal standards.  Ukolov v. Barnhart, 420 F.3d at 1004. Accordingly, the Court  DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

DATED:  June 18, 2008

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.